342 F.3d 924
CONFEDERATED TRIBES OF THE UMATILLA INDIAN RESERVATION; Nez Perce Tribe, Petitioners,Warm Springs Tribe; Shoshone-Bannock Tribes of the Fort Hall Indian Reservation, Idaho; State of Oregon, Petitioners-Intervenors,Pacific Northwest Generating Cooperative, Intervenor,v.BONNEVILLE POWER ADMINISTRATION, Respondent,Public Power Council, Respondent-Intervenor.Sierra Club; Pacific Coast Federation of Fishermens Associaton; Institute for Fisheries Resources; Idaho Rivers United, Inc., Petitioners,Pacific Northwest Generating Company (PNGC), Blachly-Lane County Cooperative Electric Association (Oregon); Central Electric Cooperative, Inc. (Oregon); Clearwater Power Company (Idaho); Consumers Power, Inc. (Oregon); Douglas Electric Cooperative (Oregon); Fall River Rural Electric Bpa No. Cooperative, Inc. (Idaho); Lane Electric Cooperative (Oregon); Lost River Rural Electric Cooperative (Idaho); Northern Lights, Inc. (Idaho); Okanogan County Electric Cooperative, Inc. (Washington); Raft River Rural Electric Cooperative (Idaho); Salmon River Electric Cooperative, Inc. (Idaho); Umatilla Electric Cooperative Association (Oregon); West Oregon Electric Cooperative, Inc. (Oregon), Intervenors,v.Bonneville Power Administration, Respondent,Public Power Council, Respondent-Intervenor.
No. 01-71736.
No. 01-71740.
United States Court of Appeals, Ninth Circuit.
Argued and Submitted May 6, 2003 — Portland, Oregon.
Filed September 2, 2003.

COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Christopher B. Leahy, Fredricks & Pelcyger, Louisville, Colorado, for petitioner Confederated Tribes of the Umatilla Reservation; Daniel J. Rohlf, Pacific Environmental Advocacy Center, Portland, Oregon, for petitioners, Sierra Club, et al., David J. Cummings, Lapwai, Idaho, for petitioner Nez Perce Tribe; Todd D. True, Earthjustice Legal Defense Fund, Seattle, Oregon, for petitioners, Sierra Club, et al.

1
Stephanie L. Striffler, Special Counsel to the Attorney General, Salem, Oregon, for petitioner-intervenor State of Oregon; Howard G. Arnett, Karnopp Petersen Noteboom Hansen Arnett & Sayeg LLP, Bend, Oregon, for petitioner-intervenor Confederated Tribes of the Warm Springs Reservation of Oregon. David J. Adler, Portland, Oregon, and Mark R. Haag, Department of Justice, Washington, D.C., for respondent Bonneville Power Administration.

2
Denise Peterson, Portland, Oregon, for respondent-intervenor Public Power Council.

3
R. Erick Johnson, Portland, Oregon, for non-aligned intervenor Pacific Northwest Generating Cooperative.

4
Clay R. Smith, Deputy Attorney General, Boise, Idaho, for amicus State of Idaho.

5
On Petition for Review of an Order of the Bonneville Power Administration. No. 01-71736 BPA No. Power Act.

6
Before DONALD P. LAY,* J. CLIFFORD WALLACE, and RICHARD C. TALLMAN, Circuit Judges.

OPINION
WALLACE, Senior Circuit Judge:

7
Petitioners Confederated Tribes of the Umatilla Indian Reservation and the Nez Perce Tribe (collectively, Tribes), Sierra Club, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and Idaho Rivers United (collectively, Sierra Club), and Petitioner-Intervenor State of Oregon petition for review of numerous decisions of the Bonneville Power Administration (BPA). Petitioners argue that the BPA both exceeded its legal authority and violated its statutory duty to treat fish and wildlife equitably with power. Except as otherwise explained, we have jurisdiction over Petitioners' timely-filed petitions under 16 U.S.C. § 839f(e). We dismiss some petitions for want of jurisdiction, and we deny the remainder on the merits.

I.

8
Created in 1937, BPA is the marketing authority for almost all federally generated electric power in the Pacific Northwest. 16 U.S.C. § 838f. The BPA administrator must exercise his hydroelectric power responsibilities "in a manner that provides equitable treatment" for fish and wildlife. 16 U.S.C. § 839b(h)(11)(A)(i). Petitioners contend that BPA violated this equitable treatment mandate through twenty-two years of agency inaction and by an August 8, 2001, Decision Document which announced BPA's intention to implement biological opinions issued by the National Marine Fisheries Service and the Fish and Wildlife Service. Petitioners also assert that BPA lacks authority to issue emergency declarations affecting hydrosystem operations.

9
BPA's actions may be set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 16 U.S.C. § 839f(e)(2) (imposing standards of 5 U.S.C. § 706(2)(A)). Agency action is arbitrary and capricious if the agency

10
has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

11
Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Due to the complex subject matter and BPA's factual and legal expertise, we give special, substantial deference to BPA's interpretation of the Northwest Power Act. Aluminum Co. of Am. v. Central Lincoln Peoples' Util. Dist., 467 U.S. 380, 389, 104 S.Ct. 2472, 81 L.Ed.2d 301 (1984); Northwest Envtl. Defense Ctr. v. Bonneville Power Admin., 117 F.3d 1520, 1530 (9th Cir.1997) (NEDC). BPA's interpretation will be upheld if it is a "reasonable interpretation of the relevant provisions." NEDC, 117 F.3d at 1530.

II.

12
The Tribes argue that, for twenty-two years, BPA failed to treat fish and wildlife on par with power. They point to various decisions in which BPA has allegedly failed its statutory mandate: its 1995 Business Plan, its 1997 System Operations Review Environmental Impact Statement, its 1998 Subscription Strategy, and a 2002 rate case. The Tribes acknowledge that they do not challenge these prior decisions, but instead challenge BPA's alleged unreasonable delay in creating a document, plan, mechanism, decision-making tool, or decision to provide equitable treatment.

13
We are not convinced that the Tribes truly challenge BPA's unreasonable delay rather than its prior decisions. See Puget Sound Energy, Inc. v. United States, 310 F.3d 613, 621-22 (9th Cir.2002) (determining the true nature of the claim before determining its timeliness); Ecology Ctr., Inc. v. U.S. Forest Serv., 192 F.3d 922, 926 (9th Cir.1999) ("This court has refused to allow plaintiffs to evade the finality requirement with complaints about the sufficiency of an agency action dressed up as an agency's failure to act.") (internal quotation marks and citation omitted). We need not determine the true nature of the Tribes' claims because we lack jurisdiction to consider either characterization.

A.

14
The Tribes filed their petitions for review on November 6, 2001. BPA's 1995, 1997, and 1998 actions fall well beyond 16 U.S.C. § 839f(e)(5)'s ninety-day limit for judicial review, a jurisdictional defect. Puget Sound, 310 F.3d at 616. As for the 2002 rate case, the Federal Energy Regulatory Commission had not approved the rate determination at the time the petitions were filed, and therefore BPA's action was not final. 16 U.S.C. § 839f(e)(4)(D). We therefore lack jurisdiction to review any of these actions.

15
As for the Tribes' claim of unreasonable delay, we lack jurisdiction because it is not a reviewable agency action under the Northwest Power Act (Act). "It is now settled that the APA [Administrative Procedure Act] does not provide an independent fount of jurisdiction to review agency action.... Jurisdiction must come from a source other than the APA." Pub. Util. Comm'r of Or. v. Bonneville Power Admin., 767 F.2d 622, 627 (9th Cir.1985) (PUCO), citing Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The Act, the relevant jurisdictional statute, gives this court exclusive jurisdiction only over timely challenges to BPA's final actions. 16 U.S.C. § 839f(e); Puget Sound, 310 F.3d at 617. The Act is the "sole means of obtaining judicial review for those classes of claims covered by the statute." PUCO, 767 F.2d at 627.

16
The Tribes assume that agency inaction is agency action under the Act because such is agency action under the APA. 5 U.S.C. § 551(13) (defining "agency action" as including an agency's failure to act); 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed"). Yet the APA's definition of an "agency action" does not necessarily apply to the Act. The Act states, "[f]or purposes of sections 701 through 706 of Title 5, the following actions shall be final actions subject to judicial review. ..." 16 U.S.C. § 839f(e)(1) (listing examples). This demonstrates that the Act defines a final reviewable agency action more narrowly than the APA.

17
The Act further limits judicial review "to the administrative record compiled in accordance with this chapter." 16 U.S.C. § 839f(e)(2). However, for review of at least some types of claims of an agency's failure to act under the APA, review cannot logically be limited to the record. San Francisco BayKeeper v. Whitman, 297 F.3d 877, 886 (9th Cir.2002) (holding the district court did not err in relying on a document that was outside the administrative record, reasoning that because the challenge was to agency inaction, "there can be no final agency action that closes the administrative record").

18
We have no need to decide whether BPA's alleged twenty-two years of inaction is reviewable under the more stringent Act definition because any inaction by BPA is not reviewable even under the more liberal APA definition. For judicial review of an agency's failure to act under the APA, Petitioners must at least show "agency recalcitrance ... in the face of clear statutory duty or ... of such a magnitude that it amounts to an abdication of statutory responsibility." Mont. Wilderness Ass'n, Inc. v. U.S. Forest Serv., 314 F.3d 1146, 1150 (9th Cir.2003) (internal quotation marks and citation omitted). BPA has no mandatory duty to act because it has no general statutory duty to demonstrate that it has treated fish and wildlife equitably. It has a duty to demonstrate compliance with the mandate only in relation to final decisions that will significantly impact the fish and wildlife population. NEDC, 117 F.3d at 1533-34. It has no duty to demonstrate its compliance with the mandate absent a final decision. Id. (refusing to consider claims of equitable treatment mandate violations where there was no final decision with respect to most of BPA's water storage). While we may review BPA's alleged failure to demonstrate compliance with the equitable treatment mandate in relation to its 2001 Decision Document, we may not review its alleged failure to demonstrate its compliance independently of a final decision impacting fish and wildlife. Because BPA's alleged inaction is not agency action under the APA, it is certainly not agency action under the Act, and judicial review of its alleged delay is unavailable.

B.

19
Petitioners like the Tribes are not without recourse. In an appropriate case, we may issue a mandate pursuant to the All Writs Act. 28 U.S.C. § 1651(a); Puget Sound, 310 F.3d at 621-22, 623. "Because the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction." Telecomm. Research & Action Ctr. v. Fed. Communications Comm'n, 750 F.2d 70, 76 (D.C.Cir.1984). But the writ of mandamus is justified only in exceptional circumstances, and

20
[u]se of the All Writs Act in connection with agency matters has been even more rare and the scope of relief granted in these cases has been narrow.... The circumstances that will justify our interference with nonfinal agency action must be truly extraordinary, for this court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts.

21
PUCO, 767 F.2d at 630. In Bauman v. United States Dist. Court, 557 F.2d 650, 654-55 (9th Cir.1977), we set out the five guidelines that inform the boundaries of our section 1651 power. Here, a writ is not justified because first, Petitioners have "adequate means, such as a direct appeal, to attain the relief he or she desires." Id. at 654. For instance, we have jurisdiction to review the 2001 Decision Document and its compliance with the equitable treatment mandate. We had jurisdiction over the older decisions, but we lost this power when Petitioners failed to seek timely review. Accord Puget Sound, 310 F.3d at 623 (refusing to issue a writ to preserve prospective jurisdiction to review BPA's rate-making because the court had jurisdiction to review the implementation of the rate). Second, BPA's decision is not "clearly erroneous as a matter of law." Bauman, 557 F.2d at 654-55. Finally, the Tribes have not shown that they will be irreparably injured. Id. at 654. In short, "[P]etitioners have failed to demonstrate they face any irreparable injury that is not correctable on review of final BPA action." PUCO, 767 F.2d at 630; Cal. Energy Comm'n v. Johnson, 767 F.2d 631, 634 (9th Cir.1985).

22
Thus, we conclude it will do no good to treat the Tribes' petitions as requests for mandamus, because they would fail to meet the requirements of Bauman.

III.
A.

23
All Petitioners and the State of Oregon argue that the 2001 Decision Document violates the equitable treatment mandate because it lacks a special document or section fully detailing its efforts to treat wildlife and fish on par with power. Except as otherwise stated, we have jurisdiction over this timely challenge to a final agency action under the Act. 16 U.S.C. § 839f(e).

24
The equitable mandate of 16 U.S.C. § 839b(h)(11)(A)(i) does not require every BPA decision to treat fish and wildlife equitably. For example, BPA may make some decisions that place power above fish, so long as on the whole, it treats fish on par with power. NEDC, 117 F.3d at 1533-34. In other words, even if BPA's 2001 Decision Document itself disadvantages fish, Petitioners must show much more. They must show that, overall, BPA treats fish second to power. Id. at 1533. BPA's duty to demonstrate compliance with the mandate matures only when BPA makes a final decision that significantly impacts fish and wildlife. NEDC, 117 F.3d at 1533-34. This speaks to when BPA must comply with the mandate. Once that duty matures, BPA complies with the mandate if, overall, it considers fish on par with power. Id. at 1533. This speaks to how BPA complies with the mandate.

25
The 2001 Decision Document recognized the equitable treatment mandate, but concluded:

26
By its efforts to avoid emergency operations and otherwise offset the unavoidable adverse impacts of emergency operations, and through its ongoing efforts under the Council's program to implement the multi-species, long-term Basinwide Salmon Recovery Strategy, BPA is giving equitable treatment to fish and wildlife consistent with the purposes of the Northwest Power Act.

27
Petitioners argue that the above explanation is insufficient. They rely on dicta in NEDC: a suggestion (not a holding) that BPA "should" develop a mechanism for detailing its efforts to comply with the mandate. 117 F.3d at 1534. They ask us to interpret "should" (a suggestion) as "must" (a holding), which we cannot do. The Act does not require BPA to produce the mechanism suggested in NEDC, nor does it mandate the comprehensive, detailed mechanism that Petitioners seek BPA to produce. Under the circumstances presented here, we cannot impose this procedural requirement ourselves.

28
Courts have limited authority to impose procedural requirements upon a federal agency which seeks to exercise the responsibilities committed to it by Congress. A history of statutory and decisional law cautions "reviewing courts against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress."

29
Wilderness Soc'y v. Tyrrel, 918 F.2d 813, 816 (9th Cir.1990), quoting Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, 435 U.S. 519, 525, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); accord Adkins v. Trans-Alaska Pipeline Liab. Fund, 101 F.3d 86, 89 (9th Cir.1996) ("absent constitutional constraints or extremely compelling circumstances, we defer to an administrative agency's fashioning of procedures"). Petitioners give no compelling reason why BPA must jump through their preferred hoops of a formal explanatory document to fulfill the mandate.

B.

30
Petitioners argue that they seek only existing APA procedures, not a new procedure. They assert that the Decision Document failed to give a reasoned explanation that permits meaningful review. NEDC, 117 F.3d at 1534 (once BPA makes a final decision affecting fish or wildlife, "BPA will be required to demonstrate, by means that allow for meaningful review, that it has treated fish and wildlife equitably"); accord Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), overruled on other grounds in Califano, 430 U.S. at 105, 97 S.Ct. 980. We have examined the administrative record, and we conclude that BPA succeeded in providing a reasoned explanation allowing for meaningful review.

31
In support for its conclusion that it was fulfilling the equitable treatment mandate, BPA provided a list in the Decision Document of the current and future "adjustments to planning and operations in 2001 that directly address Tribal concerns." We quote that list in full:

32
• The Federal Agencies' "Criteria and Priorities for 2001 FCRPS [(Federal Columbia River Power System)] Operations" (March 30, 2001), expressly recognizes that the agencies will operate the FCRPS projects consistent[ly] with treaties and executive orders with Pacific Northwest Indian Tribes and the Federal Government's trust responsibilities, as well as cultural resource laws such as the National Historic Preservation Act and the Native American Grave Protection and Repatriation Act.

33
• The 2001 FCRPS Operations Plan designates a targeted elevation at the Grand Coulee project.

34
• The Federal [a]gencies provided spill to aid the migration of Spring Creek Hatchery fish, a fish not listed under the ESA [(Endangered Species Act)] but important to Tribal fisheries.

35
• The Federal agencies have maintained flows to cover reeds at Vernita Bar and the Hanford Reach, which support healthy runs of non-ESA-listed fish important to Tribal fisheries.

36
• The Federal agencies give high priority to refilling Dworshak and using releases of Dworshak water to reduce temperature.

37
• BPA has engaged in prodigious efforts to avoid or moderate power system emergency operations by buying back and thereby reducing industrial and irrigation load, by buying power on the market, calling for conservation, and soliciting proposals for additional wind generation.

38
• Notwithstanding emergency operations, BPA continues undiminished its expenditures to support fish and wildlife measures, principally those in the Northwest Power Planning Council's Fish and Wildlife Program, which support non-ESA-listed as well as ESA-listed fish and wildlife of importance to Tribes.

39
• In addition to its usual fish and wildlife measures, BPA is developing measures to offset any adverse impacts to listed fish resulting from emergency power operations. Many of the offset measures will benefit unlisted as well as listed fish.

40
• By its efforts to avoid emergency operations and otherwise offset the unavoidable adverse impacts of emergency operations, and through its ongoing efforts under the Council's program to implement the multi-species, long-term Basinwide Salmon Recovery Strategy, BPA is giving equitable treatment to fish and wildlife consistent with the purposes of the Northwest Power Act.

41
Looking at the Decision Document's explanation, as well as the administrative record's elaboration of the cited programs, decisions, and opinions, we hold that BPA provided a reasoned explanation of its decision. Petitioners want something more, but our limited judicial powers prevent us from imposing additional procedural requirements. What BPA provided is sufficient under the APA and the equitable treatment mandate. Petitioners' procedural challenge therefore fails.

C.

42
In a footnote of their reply brief, the Tribes contend that BPA's actions are inconsistent with the Council's program. We do not consider this argument because it was not raised in their principal brief. Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998). For the same reason, we do not consider Sierra Club's argument made for the first time in a Fed.R.App. P. 28(j) letter that the 2000 National Marine Fisheries Service's Biological Opinion was arbitrary and capricious for failure to satisfy the Endangered Species Act (ESA) consultation provisions.

D.

43
In their principal briefs, Petitioners argue that the Decision Document violates the equitable treatment mandate because (1) BPA's focus was not on its equitable treatment obligations, but on the ESA requirements, and (2) the Decision Document permits future power emergency declarations to address financial concerns. The former allegation is rebutted by the above quoted section of the Decision Document, which listed its numerous efforts to benefit fish and wildlife not listed with the ESA.

44
The latter allegation is not ripe for our review. The Decision Document did not declare any additional power emergencies, but instead announced that BPA may need to declare emergencies in the future. This cautionary announcement is not ripe for review under the equitable treatment mandate. NEDC, 117 F.3d at 1533-34 (concluding it was premature to consider whether BPA violated the equitable treatment mandate in refusing to dedicate a portion of water for fish when the vast majority of BPA's share of the water was unallocated); Cal. Energy Res. Conservation & Dev. Comm'n v. Johnson, 807 F.2d 1456, 1463-66 (9th Cir.1986) (challenge to contract provisions that BPA has not yet implemented is not ripe for review).

45
Sierra Club argues that BPA violated the equitable treatment mandate by declaring power emergencies and by its criteria for declaring power emergencies. In reality, this is a challenge to BPA's January and April emergency declarations and to its March emergency declaration criteria. Sierra Club filed its action in November, long after the ninety-day jurisdictional time limit. 16 U.S.C. § 839f(e)(5); Puget Sound, 310 F.3d at 616. We lack jurisdiction to review these emergency declarations.

E.

46
Oregon argues that the Decision Document was arbitrary and capricious because BPA stated that its Decision Document provided equitable treatment "through its ongoing efforts under the Council's program." Oregon argues that BPA relied on factors that Congress did not intend it to consider. Motor Vehicle Mfrs., 463 U.S. at 43, 103 S.Ct. 2856 (agency decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider"). Oregon cites our holding in NEDC that "BPA's responsibilities to protect fish and wildlife do not end with even complete adoption of the Council's [p]rogram." 117 F.3d at 1532.

47
While we held that relying on the Council's program is not sufficient to satisfy the equitable treatment mandate, we did not hold that reliance on the program was improper. In fact, we held just the opposite. See id. ("BPA is required to take into account the Council's program to the fullest extent possible."). Moreover, BPA did not state that it was fulfilling the mandate because it was implementing the Council's program. BPA instead stated that it was fulfilling the mandate through the Council's program, along with other programs, plans, and efforts. Oregon fails to show how BPA's reliance on these other efforts, as well as on the Council's program, renders its decision arbitrary and capricious.

48
Finally, Oregon faults BPA for not exercising its option of a treasury payment deferral. Like Sierra Club's argument against BPA's emergency declarations, Oregon's challenge is untimely. BPA decided in March 2001 not to exercise payment deferral. The petitions were filed in November of 2001, far beyond the ninety-day jurisdictional limit of 16 U.S.C. § 839f(e)(5).

IV.

49
Sierra Club argues that BPA lacks statutory authority to declare power emergencies. Sierra Club's challenge is untimely because it was filed long after the January and April power declarations, missing the ninety-day jurisdictional time limit. 16 U.S.C. § 839f(e)(5); Puget Sound, 310 F.3d at 616. Simply mentioning and relying upon these power declarations in the 2001 Decision Document does not turn back this ninety-day clock. Sierra Club points to no power declaration in the Decision Document, but instead challenges the Decision Document's warning that BPA may need to declare future power emergencies. This challenge is not ripe for review. Johnson, 807 F.2d at 1463-66.

V.

50
We dismiss as moot BPA's motion to strike declarations and portions of the reply briefs. We dismiss the petitions for want of jurisdiction in part, and we deny the remainder on the merits.

51
PETITIONS DENIED.

Notes:

*
The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation